UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CR-434-M-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **GOVERNMENT'S RESPONSE** |
| | ) | **TO MOTION IN LIMINE** |
| | ) | |
| CHRISTOPHER LAMAR BAKER | ) | |
| | ) | **(Under Seal)** |

The United States, by and through the United States Attorney for the Eastern District of North Carolina, submits this memorandum to give the Court advance notice of key evidentiary issues in the trial of the above-captioned matter. The government further moves *in limine* for the admission of the government's evidence described below, as well as the exclusion of certain evidence and arguments. This omnibus motion is not an exhaustive list of the evidentiary issues that may be raised at trial.

I. **STATEMENT OF FACTS**

During the course of the investigation into the drug trafficking activities of Defendant, law enforcement identified several subjects involved in the distribution of kilogram quantities of methamphetamine and illegal firearm sales in North Carolina and other areas in the United States by the Pagan Motorcycle Club ("PMC") and led by Defendant. The trial evidence will show that Defendant was the leader of the PMC in North Carolina, a wholly illegitimate criminal enterprise. The PMC is recognized internationally by law enforcement as an Outlaw Motorcycle Gang ("OMG") based

1

criminal enterprise which has leaders across the United States and Puerto Rico. The PMC has a long history of drug and firearms trafficking in the areas it operates. Defendant has been described by cooperating witnesses as the leader of the North Carolina PMC and according to numerous law enforcement intelligence units, is believed to have previously held the rank of President of the Raleigh, North Carolina chapter of the PMC. Prior to his arrest on the instant case, Defendant was promoted to the rank of "Diamond" which is a member of the PMC mother chapter that is responsible for overseeing all the PMC members in their designated area.

Additionally, Defendant was responsible for the acquisition and distribution of kilogram quantities of methamphetamine for the Drug Trafficking Organization (DTO) linked to the PMC. The trial evidence will show that Defendant's DTO is responsible for the distribution of methamphetamine and firearms across multiple states, including North Carolina. Specifically, during the current investigation into Defendant and the PMC, twelve controlled purchases of methamphetamine were conducted by law enforcement involving Defendant, some of which also involved the purchase of firearms. Several members of the PMC assisted Defendant by travelling with him to the controlled purchase, including by driving Defendant and providing security during the purchases.

Additionally, Defendant has sources of supply in other states, including Georgia. Several cooperating coconspirators traveled with Defendant on resupply runs by driving him and providing security. Lastly, members, or those associated with Defendant, laundered money received during the controlled buys on Defendant's

behalf.

### a. Defendant's Statements Made Pursuant to Proffer Interview

After the defendant's November 17, 2021 arrest on a criminal complaint in West Virginia, the Defendant, through counsel, expressed interest in cooperating with the Government's ongoing investigation. The United States Attorney's Office for the Eastern District of North Carolina issued a proffer agreement to the Defendant in December, 2021 in an effort to allow the Defendant to begin his cooperation. In the proffer agreement, the Government agreed to confer use immunity on the Defendant in regards to the information he provided.

The proffer also contains numerous terms wherein the Defendant agreed to provide *complete* and truthful information about *all* criminal activity within his knowledge. The document also required the Defendant to agree that a violation of the agreement by failing to provide complete and truthful information voided the agreement and would result in the Defendant's statements made pursuant to the agreement being admissible during the Government's case in chief.

The Defendant was interviewed pursuant to the above-described agreement on December 14, 2021. The Defendant's attorney, Damon Chetson, along with ATF Special Agents, ATF Task Force Officers and Raleigh Police Department detectives were present for the interview. During the interview, the Defendant made numerous admissions indicating that he was a kilogram level drug trafficker and that he conspired with several individuals, including several indicted co-conspirators, to distribute methamphetamine.

3

The Defendant was also asked to provide information about an individual that he ordered other co-conspirators to murder who had sold him counterfeit drugs. However, the defendant failed to provide information about this event and then, after his attorney played him a recorded phone call with the defendant ordering to have this individual "taken care of," the defendant still refused to provide information about the conspiracy to murder despite other co-defendants having told ATF that the defendant ordered them to go murder this individual. The report from the proffer interview indicates that the Defendant refused to provide any information about this event other than to state that he simply wanted to "talk" with this individual. Further, the defendant has refused to talk about an event in July 2021 when Pagans were violently assaulted at the Clayton Drafthouse by the Hells Angels and other members of their support clubs and the defendant was intercepted on the T-III in this case discussing retaliation for this event and ordering guns from his source of supply, Ted Cannon (indicted co-defendant), to take care of the "problem."

If a trial court finds that a defendant has materially breached a proffer agreement, the government is free to use that defendant's statements from the proffer interview. *United States v. Seeright*, 978 F.2d 842, 846 (4th Cir. 1992) (citing *United States v. Donahey*, 529 F.2d 831, 832 (5th Cir. 1976)). Giving evasive or misleading answers, refusing to answer certain questions, or withholding evidence regarding one's involvement in cocaine trafficking all constitute a material breach. *Id.*; *see also United States v. Hoffenberg*, 908 F.Supp. 1265 (S.D.N.Y. 1995) (holding that a material breach of a proffer agreement has occurred when a defendant who has

4

promised to truthfully disclose all information about which the Government inquires later makes any false statement, misleading statement, or omission concerning an area about which the Government has inquired).

In the case at bar, the Defendant materially breached the terms of the proffer agreement when he agreed to provide complete and truthful information but refused to provide information about the conspiracy to commit murder for being sold fake drugs. This breach is even more egregious in light of some of the discovery material produced to the Defendant through counsel – both the affidavit written in support of the Title-III application and summaries of intercepted calls of the Defendant show that he and other co-defendants had telephonic contact multiple times a week about drug trafficking, gang related information, violent crimes about which they had knowledge, and a variety of other topics. As a result of the Defendant's breach, the Government will seek to introduce the Defendant's statements about methamphetamine trafficking from the proffer interview during its case in chief. The Government would also be prepared to offer additional evidence to establish a breach of the proffer agreement at a hearing if the Court deems necessary.

Assuming *arguendo* that the Court does not find that the Defendant has not committed a material breach of the proffer agreement such that his statements are admissible during the Government's case in chief, the Government would contend that there are still limited circumstances under which the content from the proffer interview should be admitted.

First, the content of the proffer interview is proper grounds for cross

5

examination as to prior inconsistent statements in the event that the Defendant testifies. Paragraph 4 of the Defendant's proffer agreement specifically advises the parties of this possibility. The content of the proffer interview is also proper rebuttal evidence if the Defendant were to put on contradictory evidence either through his own testimony or the testimony of others.

Finally, the content of the proffer interview would be properly admitted if counsel for the Defendant were to open the door by making arguments or questioning the Government's witnesses in a manner which would imply to the jury that the Defendant contends that he is uninvolved in drug trafficking. Not only would such trial tactics violate the terms of the proffer agreement but this would also violate counsel's duty of candor to the tribunal. 27 N.C. ADMIN CODE 2, Rule 3.3 cmt 2 (". . .[T]he lawyer must not allow the tribunal to be misled by false statements of material fact or law or evidence that the lawyer knows to be false.").

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

## CONCLUSION

For the above reasons, the Government respectfully moves for the admission of its evidence as outlined above. The foregoing is not an exhaustive list of the facts, issues, and evidence the government anticipates will arise at trial. The government respectfully reserves the right to adjust its evidence as events dictate and to submit any further briefs and memoranda as become necessary.

Respectfully submitted this 23rd day of August, 2022.

                                        MICHAEL F. EASLEY, JR.
                                      United States Attorney

BY:    /s/ *Kelly L. Sandling*
         KELLY L. SANDLING
         Assistant United States Attorney
         Criminal Division
         150 Fayetteville Street, Suite 2100
         Raleigh, North Carolina 27601
         Telephone: 919-856-4342
         Fax:   919-856-4487
         Emile: kelly.sandling@usdoj.gov

         */s/ Robert J. Dodson*
         ROBERT J. DODSON
         Assistant United States Attorney
         Criminal Division
         150 Fayetteville Street, Suite 2100
         Raleigh, NC 27601
         Telephone: (919) 856-4054
         Facsimile: (919) 856-4487
         Email: Robert.Dodson@usdoj.gov

CERTIFICATE OF SERVICE

This certifies that a copy of the foregoing has this 23rd day of August 2022, been served upon the defendant by electronic mail to:

Damon Chetson
The Chetson Firm, PLLC
19 W. Hargett Street
Suite 508
Raleigh, NC 27901
919-352-9411
damon@chetson.com

                                  BY:   /s/ *Kelly L. Sandling*
                                              KELLY L. SANDLING
                                            Assistant United States Attorney
                                            Criminal Division
                                            150 Fayetteville Street, Suite 2100
                                            Raleigh, North Carolina 27601
                                            Telephone: 919-856-4342
                                            Fax:   919-856-4487
                                            Emile: kelly.sandling@usdoj.gov

                                            /s/ *Robert J. Dodson*
                                            ROBERT J. DODSON
                                            Assistant United States Attorney
                                            Criminal Division
                                            150 Fayetteville Street, Suite 2100
                                            Raleigh, NC 27601
                                            Telephone: (919) 856-4054
                                            Facsimile: (919) 856-4487
                                            Email: Robert.Dodson@usdoj.gov