UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

----------------------------------------------------------

UNITED STATES OF AMERICA,

             Plaintiff,

    -vs-                  Case No. 5:21-CR-434-M-1

CHRISTOPHER LAMAR BAKER,

             Defendant,

    and

UNITED STATES OF AMERICA,

             Plaintiff,

    -vs-                  Case No. 5:21-CR-434-M-13

LANDON HOLCOMB,

             Defendant.

----------------------------------------------------------

PRETRIAL PROCEEDINGS - MOTION HEARING and ARRAIGNMENTS
SEPTEMBER 12, 2022
THE HONORABLE CHIEF JUDGE RICHARD E. MYERS II
UNITED STATES DISTRICT JUDGE

Risa Kramer, RMR, CRR
Official Court Reporter
United States District Court
Wilmington, North Carolina

1                    A P P E A R A N C E S

2

3    On Behalf of the Government

4    ROBERT J. DODSON
     KELLY L. SANDLING
5    United States Attorney's Office - EDNC
     150 Fayetteville Street, Suite 2100
6    Raleigh, North Carolina 27601

7

8    On Behalf Of Defendant Christopher Lamar Baker

9    DAMON CHETSON
     The Chetson Firm, PLLC
10   19 W. Hargett Street, Suite 400
     Raleigh, North Carolina 27601
11

12   On Behalf Of Defendant Landon Holcomb
13
     ELISA CYRE SALMON
14   The Salmon Law Firm, LLP
     P.O. Box 185
15   Lillington, North Carolina 27546

16

17

18

19

20

21

22

23

24

25

```
 1                  TRANSCRIPT OF PROCEEDINGS
 2             (Proceedings commenced at 9:45 a.m.)
 3             THE COURT:  All right.  Good morning,
 4   counsel.  If the clerk would please call the case.
 5             THE CLERK:  USA versus Christopher Baker and
 6   USA versus Landon Holcomb.
 7             THE COURT:  All right.  Before we proceed to
 8   the scheduled arraignments, we'll have a hearing on the
 9   motion to dismiss the fourth superseding indictment to
10   determine whether or not we're gonna so proceed.
11             Counsel, please state your appearance for
12   the record.
13             MS. SANDLING:  Your Honor, good morning.
14   Kelly Sandling for the government.
15             MR. DODSON:  Good morning, Your Honor.
16   Robert Dodson for the government.
17             MR. CHETSON:  Good morning.  Damon Chetson
18   for Mr. Baker.
19             MS. SALMON:  Good morning, Your Honor.
20   Elisa Salmon for Mr. Holcomb.
21             THE COURT:  We're here -- I think,
22   Mr. Chetson, it's your motion.  Ms. Salmon, does your
23   client join in Mr. Chetson's motion?
24             MS. SALMON:  Yes, Your Honor, with leave of
25   court.
```

1          THE COURT:  Okay.  I'll hear from you,

2    Mr. Chetson.

3          MR. CHETSON:  I don't need to be heard

4    further than what's in the motion, Your Honor.

5    Obviously that was drafted at the last minute on

6    Saturday evening, so it's -- very quick motion.  And I

7    will let the Court know that I referred to other -- you

8    know, I had to look up the law very quickly and make

9    that motion.  I don't need to expound further, Your

10   Honor.  It's late, and that's our issue.

11         THE COURT:  Okay.  I'll hear from the United

12   States.

13         MS. SANDLING:  Your Honor, the government

14   would ask that Your Honor dismiss or deny that motion.

15   There's no prejudice to the defendant with the fourth

16   superseding indictment.  The third superseding

17   indictment added a new defendant and a new charge

18   related to the third superseding indictment.

19         Regarding the fourth superseding indictment,

20   that was just a clerical error in count 5 upon review of

21   the evidence in this case, as well as another count

22   lowered the mandatory minimums as it relates to the

23   defendant.  And we'd ask that be denied.

24         MR. CHETSON:  Your Honor, just very briefly,

25   with respect to the no prejudice issue.  Obviously, to

the extent that one of the counts reduces the drug
amounts and therefore lowers the mandatory minimum, that
wouldn't necessarily be prejudice, and that's not my
chief concern.  But in any case, to the extent that the
evidence doesn't match the indictment, the Court would
presumably either dismiss that count at the close of
evidence or the government would dismiss the count -- or
not dismiss the count but acknowledge that they had not
met the 50-gram threshold with respect to that
particular count.

The prejudice arises with respect to the
count where the government fixes the -- in what they
described in the e-mail to the clerk of -- or the case
manager -- corrects a -- an issue to bring it more in
line with factual matters.

And the prejud- -- I mean, it's so late,
Your Honor.  We were in court on Wednesday.  And in
addition to this, it's not the defense -- it's not just
as if defense counsel is tackling this issue alone.  It
is -- obviously, as you come up on trial as a solo
practitioner, with gigabytes or megabytes of discovery
still coming, and a number of productions hit us after
Wednesday, it becomes difficult to prepare.

And the indictment should not be a moving
target.  The government -- and in response, I think the

Fourth Circuit case law indicates that where the Court
were to dismiss with prejudice and not allow a
prosecution, that's where the government would have a
serious contention that this ought not to be dismissed.
But all we're asking is just go back to the indictment
upon which my client was arraigned on Wednesday, which
is the third superseding indictment, and charges all the
same counts.

THE COURT:  All right.  I'm deeply troubled
that this has arrived this late.  The case law on late
indictment is -- is not considering this posture.  The
question is these are late changes to charges about
which the defendant has had due process notice.  I don't
think there's a constitutional violation.  I don't
believe there's a Rule 48 violation.  There's a
possibility the Court has the authority under its
inherent authority to manage its docket to dismiss the
fourth superseding indictment and proceed on the third.

The grand jury has spoken.  We do have an
indictment.

Mr. Chetson, if you want to continue this
because you feel you are significantly prejudiced in
some way, I will listen to that.  The Court -- it is
troubled by the fact that the Court had to respond to
this last minute.  I think there were changes to counts

1, 5, 6, 7, 8, 12, 13, 14, 16, and 17. Whether or not the government believes they're substantive, they're real, and the jury instructions had to be redrafted, the parties had to stop and look at it and figure out what's going on and why do we have a fourth superseding indictment, and that happens eve of trial and after the pretrial conference. I'm deeply troubled by this.

I don't believe it constitutes a constitutional violation. I don't believe it's a Rule 48 violation.

MR. CHETSON: You do believe it's a --

THE COURT: I do not believe it's a Rule 48 violation.

The issue of substantive notice, I think the United States is correct that the defendant has had substantive notice of the substance of the charges. I've heard two different things on discovery. I've heard from the United States that all discovery was provided before the pretrial conference and that there's no new discovery. I've heard differently from Mr. Chetson. Can you explain?

MR. CHETSON: Well, I mean, the government might contend it's not new to the extent that -- for instance, what I've gotten -- what we've gotten are all the plea -- or a lot of the plea agreements that were

entered into.  I got discovery at 10:00 last night, Your

Honor, and those would be plea agreements, proffer

agreements.  I'm trying to think about what else was in

there.  There have been 11 productions, Your Honor, and

so I'm kind of losing track.  And I will say 11

productions, and five or six of those since the

arraignment and two of them, I think, in the last four

days.

The government might contend that they're

not new productions in terms of I should know that I'm

going to be getting the plea agreements at some point,

and I've seen a plea agreement before, but those were

all -- a lot of those were produced just last night.  So

that's the issue with the production of discovery.

I understand the Court's point about there

not being a constitutional violation.  I obviously

disagree with the Court with respect to the Rule 48

issue.  And so the problem with the lateness of it is --

I will also say that I am trying to be very careful to

protect my client's rights, but I did not meticulously

examine an 18-count indictment as compared to an

indictment that I was arraigned on on Wednesday.  And so

I was taking as -- when the government represented that

there were only changes to counts -- I think 5 was one

of the counts and another -- and the possession of the

1    illegal fire- -- or the possession of the firearm that
2    was nonconforming and therefore not properly registered,
3    I took that to be true and didn't inquire further.  And
4    part of this is the extreme lateness of the revelation
5    of the indictment.
6              And I understand that the government has
7    certain rules it needs to follow with respect to the
8    secrecy of the grand jury.  But the grand jury -- we got
9    grand jury transcripts that showed that the grand jury
10   was meeting here in the morning of September 7th.  And
11   so we were in your courtroom down in Wilmington, Your
12   Honor, in the afternoon, 2:00, 2:30, and that would
13   have -- might have been an opportunity to let us know
14   that the grand jury had met and potentially returned an
15   indictment.
16             I mean, I understand that these things --
17   we're not claiming that they're new counts in there that
18   therefore put us in a different position with respect to
19   the overall tenor of the case.  I understand what the
20   case is about.  But, you know, I think the Court -- the
21   pattern of late indictments which I've seen in this
22   case, including the August indictment, which I did not
23   complain about but came after the arraignment in late
24   July, that was concerning to me, the fact that we had
25   yet another indictment with yet another substantive

count because the -- we need to be sure that the client
feels as though and the public has the perception that
this is a fair trial, not a trial by ambush, or a trial
where an indictment's revealed where the government --
government -- enormous amount of resources and enormous
amount of staff that it has can sort of bulldoze a sole
practitioner who's trying to do a thorough job for his
client and puts himself in an awkward position on a
Monday morning after receiving an indictment on Thursday
afternoon or Thursday evening, because I was literally
in my car when I got the notice and doing errands on
part of this case.

            And that's how most defense counsel are in
this district, and particularly around the country,
simply because most defense counsel are solo
practitioners, given the nature of the way the work --
this work does -- works.  So I'm troubled by it, Your
Honor, and I understand why the Court may be troubled by
it, but I'm troubled by it because it suggests a
pattern.  And this is not -- and, you know, I'm here
about this case.  I'll just talk about the suggested
pattern.  And that's a problem.

            And I'll draw it back to one other issue,
which I know the Court's already denied my motion on.
But the late notice -- and I don't believe the Court's

```
1   correct on this, but I respect the Court's ruling -- the
2   late notice with the expert witnesses.  Now, with -- I'm
3   a professional and I understand what this case is about.
4   This case is about guns and drugs.  So I was fully
5   prepared and I have known since December that there were
6   gonna be, if we went to trial, witnesses with respect to
7   the chemical analysis and so forth.  I don't complain
8   about that, Your Honor, because I know that's coming, as
9   well as the nexus experts.  And I understand that this
10  case has the aura of a gang or a club around it.  But
11  when the government notices it at the last moment, which
12  is literally the last moment for that to happen, four
13  days before his pretrial motions hearing, and I have to
14  scramble on a weekend to write a response and then we
15  have to have that argument and then we have to try to
16  search around for an expert of our own to respond, that
17  puts us in a very difficult position.
18              So not to relitigate that or to bring it
19  back home to this issue.  The government has lots of
20  folks they can have read their indictments and make sure
21  that they're perfect before they go before that grand
22  jury, and I know the government strives to do that.  And
23  I would ask you -- and the government saw fit to have my
24  client arraigned on the third superseding indictment.
25  We aren't prejudicing the government, really, at all,
```

but for the government's error in doing this late.  You
aren't prejudicing -- I am not asking for a continuance,
to be clear, because I've been adamant that we should
honor the speedy trial -- my client has been adamant
that we should honor the Speedy Trial Act.  I am certain
that the government -- well, I don't want to speak for
the government, but a lot of preparation has gone in for
me personally and for my office and for other counsel to
all be here today to try this case, so I want to proceed
today.

I also don't think it's appropriate for a
last minute indictment to then force the defense into a
continuance because all you're doing -- as a practical
matter, Your Honor, you can then use the speedy -- you
can use your indictment powers to just drive back the
speedy trial calendar.  And I understand that Courts are
gonna be very reluctant in very serious cases, which are
almost all what we do in federal court, to just bar the
government from prosecuting that individual.

So this would be a reminder -- it would help
us to preserve the fairness of the trial here and would
be a reminder to the government to make sure its
indictments are filed at an early enough stage so that
the, generally, solo practitioner nature of the defense
bar that handles CJA cases, which I do a lot of, and

private counsel cases are able to prepare adequately.
Thank you.

THE COURT:  Ms. Sandling, will you please make your record on the prejudice that would exist to the United States if the Court were to dismiss the fourth superseding indictment without prejudice and permit you to proceed on the third?

MS. SANDLING:  Yes, Your Honor.

To speak to Mr. Chetson's statements, Your Honor, it is not uncommon for the government to supersede its indictment to correct issues in an indictment prior to trial.  Mr. Chetson was informed literally from the first day that he entered notice in this case that the government's intent was to RICO and VICAR this case.  The government is not finished with this case related to this defendant and other unindicted defendants in this case at this time.

The government was working towards a RICO when Mr. Baker stopped cooperating and then decided that he wanted a speedy trial, which the government has prepared for.  But at the same time, there were other defendants yet to be indicted that had not been indicted in this case that the government's intent all along was to indict but had to do so faster than the government's intent originally in this case but for him pleading not

1    guilty and invoking his speedy trial rights.

2              There has not been any new discovery related

3    to the NFA count, Your Honor.  There was an evidence

4    review on Thursday that Mr. Chetson and Ms. Salmon

5    attended at the ATF office.  Mr. Dodson was at that

6    evidence review because I was preparing a codefendant --

7    a testifying witness in this case and could not do that

8    and be at the evidence review.

9              At that evidence review, Mr. Chetson and

10   Ms. Salmon looked at the evidence.  Shortly after that

11   evidence review was over, the notice of a true bill of

12   indictment was noticed over ECF which is why the

13   government did not inform the Court on Wednesday,

14   because we did not yet have a true bill of indictment.

15             Mr. Chetson then called Mr. Dodson right

16   after receiving notice of the indictment and said:  Are

17   there any new changes to the indictment as it relates to

18   my client?  Mr. Dodson informed Mr. Chetson about the

19   NFA count and reducing the mandatory minimum, and

20   Mr. Chetson said:  Okay, thanks.  And that was the end

21   of the conversation.  There was no verbalized

22   conversation at that moment where Mr. Chetson says, "I

23   can't be ready."  The only thing that was articulated

24   was "Okay," and then the conversation ended.

25             The government, Your Honor, needed to

correct that upon review of the firearm, and it
originally had alleged less than 26 total inches and now
alleges less than 18.  There's nothing that's changed in
the discovery regarding that.

THE COURT:  That's a substantive difference.
If the firearm is more than 26 inches, it's more than 26
inches, and that is a significant substantive change in
the basis for the underlying indictment.  If it is less
than 26 inches, we can proceed on the less than 26
inches.  If it's an issue of the barrels, that's a
different substantive basis for an NFA count.

MS. SANDLING:  And I understand that, Your
Honor, but the evidence has been able to be reviewed by
Mr. Chetson --

THE COURT:  But he wasn't charged with it.

MS. SANDLING:  He was charged with the NFA
count.  He's always been charged with the NFA count.
That hasn't changed since originally the first
indictment in this case.

THE COURT:  Then you're prepared to proceed
on 26 inches?

MS. SANDLING:  No, Your Honor.  The
government would be prepared to proceed on the fourth
superseding indictment because the barrel is less than
18 inches.

```
1              THE COURT:  I'm asking you if you are
2   prepared to -- are you prepared to proceed on 26 inches?
3   This is a late indictment with a significant substantive
4   change on a count that has a very significant penalty
5   for this defendant.  I'm very concerned about this.
6              MS. SANDLING:  The government -- that is
7   incorrect, Your Honor, regarding what the total length
8   of the barrel is, and so that would not be factually
9   correct.
10             THE COURT:  All right.  I'm gonna permit the
11  conforming amendments that are in the fourth superseding
12  indictment except for the NFA count.  I believe that to
13  be a substantive change, and I believe it to be a late
14  arriving substantive change and the kind that has the
15  potential to prejudice this defendant because it is a
16  different substantive basis for the charge that
17  constitutes an NFA violation.
18             MR. CHETSON:  May I be heard, Your Honor?
19             And just to be clear, if -- I'm gonna look
20  through the -- because the Court noted additional
21  changes.  And I -- I'll be -- I'm not here to -- this is
22  the issue with getting a late indictment.  This is
23  precisely the issue, is that I come in here and look
24  unprepared, and I understand that looks bad for this
25  Court, but there's a lot going on in this case.  And I'm
```

just reminding the Court that I'm not trying to complain about the fact that I chose to go into this profession and be a solo practitioner, but that's the raw reality of it. And in order for my client to have a sound defense and be prepared for trial, he needs to be sure that his attorney is prepared, and he may have some concerns about at this stage.

But in any case, that's why I'm asking to go back to the third indictment. And so I want to be sure, if I look over our break at this indictment and there are other issues in the fourth superseding indictment that turn out to be substantive or impinging my client's rights, that I'm allowed to raise that issue.

If you were to dismiss -- or if you were to force the government to proceed on the third superseding indictment, that doesn't mean that the fourth superseding indictment would be dismissed as to any other defendants that they wanted to go after. And if that's the purpose behind the indictment, then that survives for all remaining defendants. But it obviously -- the fourth superseding indictment wouldn't survive for this defendant, and it doesn't survive for all the folks that have pled guilty already. They can't be, you know, charged under the fourth superseding indictment. So that's why I would ask you to go back to

1   the third superseding indictment.

2           In addition -- and I'm gonna make this

3   point, and understand it's done respectfully -- but the

4   government has been saying for some period of time about

5   VICAR and RICO, and what I heard from the government in

6   its statement to the Court is concerning.  First is that

7   if the government can't speak about this indictment

8   prior to it coming out, which I understand is the rule,

9   then telling me about all the indictments it wants to

10  file prospectively in the future months ago seems to cut

11  against that argument, especially when this indictment

12  came out on Wednesday morning.

13          And obviously we have this pall over the

14  cases -- idea of VICAR and RICO.  Well, the government

15  has enormous power.  It can go charge VICAR and RICO.

16          Next is that the government's suggestion

17  seemed to me that by exercising his right to go to trial

18  against the United States government, that it was

19  somehow the defendant's fault for not dragging this case

20  out longer to give the government time to RICO and VICAR

21  him.  That's the government's rhetorical position.

22  That's very problematic because a citizen or a person in

23  this country has the right to demand a trial.  And the

24  exercise of the speedy trial rights is sacrosanct.  It's

25  actually one of the few rights that a defendant has in a

federal courtroom which really puts the government to
the test.

           And so I find those statements a little bit
concerning because it's almost as if it's my fault, I
should have known that it was VICAR and RICO coming and
a fourth superseding indictment, and therefore I should
be the one that's sort of to blame for this.

           Finally, I have always had very cordial
relationship with both government prosecutors.  When I
was in my car running an errand for this case, I got the
notice on my iPhone and, you know, had that heart stop
issue, and so called Mr. Dodson -- and I respect
Mr. Dodson, and it was a cordial phone call.  But it is
no -- by no means meant to give up my client's rights,
and I -- I don't think that I should have, you know,
litigated the issue on the phone with him.  I should
litigate the issue in the courtroom with Your Honor.

           So that cordial phone call -- and I will
remain cordial throughout this even though passions can
get high -- but that cordial phone call about:  Okay,
thanks, I'm glad there's not another count because I
don't -- I've been preparing for weeks, and I pushed off
other trials for this.  So I'm asking Your Honor to deny
the government's motion to allow this Fourth Circuit --
or the fourth superseding to move forward.

1          THE COURT:  The reduction from 50 to 5
2    milligrams on methamphetamine, the Court considers that
3    to be a lesser included.  The changed basis for the NFA,
4    the Court considers that to be a late arriving notice
5    and substantive change.  The defendant has a right to a
6    speedy trial in this case.  I'm deeply concerned with --
7    I'm deeply concerned with this material arriving late.
8    And Rule 6(e) does not -- the fact the grand jury is
9    secret does not mean the United States does not control
10   what it takes before the grand jury at that time.

11          I understand what's happened here.  But it
12   is deeply concerning that this is arriving after the
13   pretrial conference, after jury instructions have been
14   exchanged, after the opportunity to get an expert is
15   complete, and then this change arrives.  That's just not
16   how this is supposed to work in a trial where we do
17   these things public.  We have a Speedy Trial Act.  We
18   have the Sixth Amendment to the Constitution of the
19   United States, and those things are designed to give the
20   defendant a right to have his full notice and an
21   opportunity to try the case squarely on the issues
22   before him.

23          I understand that in the process of working
24   through an immensely complex case, things change.  I
25   understand that.  This is, as these things go,

1    incredibly late.

2             The Court's been through all the Fourth

3    Circuit case law on late arriving changes that conform

4    to the evidence, that evidence has been previously

5    noticed.  I believe the NFA change to be a substantive

6    change.  The NFA charge is dismissed without prejudice

7    as to the fourth superseding indictment.  If the United

8    States chooses to dismiss as to the third superseding

9    indictment now, I believe that -- and I will dismiss

10   without prejudice.  I think the Fourth Circuit frowns

11   deeply on me dismissing with prejudice for a

12   nonconstitutional violation at this time.  I would

13   dismiss the NFA count in the third superseding

14   indictment and the fourth superseding indictment if the

15   government so requests.  We have not yet impaneled a

16   jury.  Jeopardy has not yet attached.  Future litigation

17   in this case is possible, and a return to the grand jury

18   is possible unless it is so substantively intertwined

19   that we have a double jeopardy problem.  I don't know.

20            All right.  I'll hear from the United

21   States.  What's your position on the NFA count?

22            MS. SANDLING:  Your Honor, may we have a

23   minute?

24            THE COURT:  You may.

25            (Discussion off the record.)

1      MS. SANDLING:  Your Honor, the state will

2  take a dismissal on the NFA count.

3      THE COURT:  All right.  The NFA count --

4      MS. SANDLING:  Or the government.  Excuse

5  me.

6      THE COURT:  The government takes a dismissal

7  on the NFA count related to the short-barrel shotgun.

8  That is dismissed as to both the third and fourth

9  superseding indictments.  That is a dismissal without

10 prejudice.  We will proceed without that count as part

11 of this trial.

12      The Court cautions the parties now regarding

13 double jeopardy issues that may attach to the possession

14 of that NFA firearm in connection with it being an NFA

15 firearm, in connection with the drug trafficking count.

16 It may have been possessed at another time.  There may

17 be plenty of evidence that -- at another time and in

18 another place that would not implicate double jeopardy.

19 I'm just putting it on the record that there is a double

20 jeopardy concern in the Court's mind regarding the

21 possession on the date at the time of the sale.

22      I will also note for the parties that a

23 conviction on the underlying substantive drug count has

24 the potential of having some of that come back without

25 mandatory minimums and without all the other NFA

1  application at sentencing.  So a dismissal of the count

2  does not dismiss all of the potential implications of

3  the possession of that firearm.

4          We'll go forward on the fourth superseding

5  indictment.  We'll dismiss the third and fourth

6  superseding indictment as to the NFA count, which is

7  count 5.

8          And, Mr. Chetson, I understand all the

9  arguments that you've made.  The other counts that the

10  Court has looked at -- and again, I'm troubled that in

11  the middle of your trial preparation at this late date

12  you're having to deal with this instead of being

13  prepared for your substantive charges.  I understand it.

14  The remedy for that would be continuance, and the

15  defense is not requesting a continuance at this time.

16          MR. CHETSON:  No, Your Honor.

17          THE COURT:  All right.  The remaining

18  changes, one would be to reduce from 50 to 5 milligrams

19  of methamphetamine.  That would be a lesser included

20  offense, and the government would be able to get a

21  lesser included offense instruction regarding a smaller

22  amount of methamphetamine.  Having charged 50, it could

23  prove 5 and convict on 5.

24          The remaining changes exist.  They exist to

25  the point where the Court will enter a new arraignment,

```
1   but they are nonsubstantive, they are procedural or
2   technical regarding names and names of codefendants.
3              Judge Britt is a shorter man than I am.  My
4   feet don't have room under his bench.
5              All right.  Do the parties want five minutes
6   before we proceed to arraignment, or can we proceed to
7   arraignment on the fourth superseding indictment?
8              MR. CHETSON:  We can proceed, Your Honor.
9   My copy of the fourth superseding is in the conference
10  room.  I showed it to my client.  If I can go to the
11  conference room real quick to get it, would that be
12  okay?  Thank you.
13             THE COURT:  Yeah.  We'll take a five-minute
14  recess and then return.
15             (Proceedings recessed at 10:15 a.m.)
16             (Proceedings recommenced at 10:19 a.m.)
17             THE COURT:  All right.  We'll proceed to
18  arraignment at this time.  We'll start with --
19             MR. CHETSON:  Your Honor, Ms. Salmon's...
20             THE COURT:  Okay.  At this point,
21  technically, I think we're calling just your case.
22             MR. CHETSON:  Okay.  That's fine, Your
23  Honor.
24             THE COURT:  But thank you.
25             MR. CHETSON:  Okay.
```

```
 1                THE COURT:  It's quite all right.  It's
 2   quite all right.  We can wait for her to come back
 3   and --
 4                MR. CHETSON:  No, that's fine.
 5                THE COURT:  All right.  So we'll proceed in
 6   the arraignment in Mr. Baker's case first.
 7                MR. CHETSON:  Thank you, Your Honor.
 8                THE COURT:  If the clerk would please call
 9   the case.
10                THE CLERK:  USA versus Christopher Baker.
11                THE COURT:  Counsel, please state your
12   appearance for the record.
13                MR. CHETSON:  Damon Chetson for the
14   defendant, Mr. Baker.
15                MS. SANDLING:  Kelly Sandling for the
16   government.
17                MR. DODSON:  Robert Dodson for the
18   government.
19                THE COURT:  All right.  Mr. Chetson, your
20   client prepared to enter a plea to the fourth
21   superseding indictment notwithstanding your preserved
22   objection?
23                MR. CHETSON:  Yes, Your Honor.
24                THE COURT:  Good morning, Mr. Baker.
25                DEFENDANT BAKER:  Good morning.
```

1                    THE COURT:  If the clerk would please

2       administer the oath.

3                    THE CLERK:  Raise your right hand, left hand

4       on the Bible.  Is there one right there?

5                    Raise your right hand, left hand on the

6       Bible.  Please state your name for the record.

7                    DEFENDANT BAKER:  Christopher Baker.

8                    (The defendant was placed under oath.)

9                    THE COURT:  Mr. Baker, do you understand

10      you're now under oath, and if you do not answer my

11      questions truthfully, the United States may use your

12      answers against you in another prosecution for perjury

13      or for making false statements?

14                   DEFENDANT BAKER:  Yes, sir.

15                   THE COURT:  Before accepting your plea of

16      either guilty or not guilty, there are a number of

17      questions that I must ask you and a number of things

18      that I must tell you.  It's important you fully

19      understand my questions and statements.  If you don't

20      understand me at any time, I'm happy to repeat myself.

21      Please say so.  You may confer with your lawyer before

22      answering any of my questions.

23                   How old are you, sir?

24                   DEFENDANT BAKER:  Sir?

25                   THE COURT:  How old are you?

```
1                    DEFENDANT BAKER:  48.
2                    THE COURT:  How far did you go in school?
3                    DEFENDANT BAKER:  GED.
4                    THE COURT:  Do you speak and understand
5     English?
6                    DEFENDANT BAKER:  Yes, sir.
7                    THE COURT:  Do you read and write in
8     English?
9                    DEFENDANT BAKER:  Yes, sir.
10                   THE COURT:  Do you have any illness or
11    condition that affects your ability to hear and
12    understand these proceedings today?
13                   DEFENDANT BAKER:  No, sir.
14                   THE COURT:  Have you taken any drugs,
15    medicine, pills, or drunk any alcohol within the last 24
16    hours?
17                   DEFENDANT BAKER:  Blood pressure medicine.
18                   THE COURT:  Does that blood pressure
19    medicine affect you today in any way?
20                   DEFENDANT BAKER:  No, sir.
21                   THE COURT:  Mr. Chetson, do you have any
22    doubt as to your client's competence at this time?
23                   MR. CHETSON:  No, Your Honor.
24                   THE COURT:  Ms. Sandling, does the United
25    States have any such doubt?
```

```
 1                MS. SANDLING:  No, Your Honor.
 2                THE COURT:  Based on this Court's questions
 3     and the defendant's and counsel's answers, this Court
 4     finds that the defendant is competent to enter a plea
 5     today.
 6                Mr. Baker, you were arraigned on the second
 7     superseding indictment on July 26th, 2022, and on the
 8     third superseding indictment on September 7th, 2022, and
 9     you pleaded not guilty to all charges at those times.
10     Do the pleas to the unchanged counts still stand?
11                DEFENDANT BAKER:  Yes, sir.
12                THE COURT:  Have you received a copy of the
13     fourth superseding indictment?
14                DEFENDANT BAKER:  Yes, sir.
15                THE COURT:  Have you had a chance to discuss
16     the fourth superseding indictment and your case with
17     your lawyer?
18                DEFENDANT BAKER:  Yes, sir.
19                THE COURT:  Have you had the conversations
20     with him that you need?
21                DEFENDANT BAKER:  Yes, sir.
22                THE COURT:  Are you fully satisfied with
23     your lawyer's legal services in your case?
24                DEFENDANT BAKER:  Yes, sir.
25                THE COURT:  We had an arraignment in this
```

1   case last week at which I advised you of your rights.

2   Do you need me to repeat those rights to you at this

3   time?

4           DEFENDANT BAKER:  No, sir.

5           THE COURT:  All right.  Do you waive me

6   reading the fourth superseding indictment aloud at this

7   time for notice?

8           DEFENDANT BAKER:  Yes, sir.

9           THE COURT:  All right.  The penalties as to

10  counts 1, 8, 6, 7, 13, and 16, I believe, remain the

11  same.  Which count have we changed?  The -- 13?  10.

12          THE LAW CLERK:  No, 6.

13          THE COURT:  Count 6?  All right.  Count 6 is

14  the one where we've changed the charge to distribution

15  of 5 grams or more of methamphetamine, a Schedule II

16  controlled substance and aiding and abetting from 50

17  grams.

18          That substantive change reduces the maximum

19  -- or the mandatory minimum penalties.  It becomes at

20  that point not less than five years and not more than 40

21  years imprisonment, a fine not to exceed $5 million, or

22  both such fine and imprisonment; not less than four

23  years and not more than life on supervised release; not

24  more than three years of imprisonment upon revocation of

25  supervised release; a 100-dollar special assessment; and

1    restitution, if applicable.

2              The Court has exercised its authority over

3    management of this case to dismiss the fourth

4    superseding indictment as to count 5 without prejudice.

5    This has led the United States in its discretion to

6    dismiss count 5 without prejudice.  Those dismissals are

7    without prejudice.

8              Mr. Baker, have you answered all of my

9    questions truthfully today?

10             DEFENDANT BAKER:  Yes, sir.

11             THE COURT:  I'm now going to read the

12   charges and ask you how you plead.

13             Actually, before we proceed, do you need any

14   further explanation regarding the penalties from your

15   lawyer, an opportunity to discuss them at this time?

16             DEFENDANT BAKER:  No, sir.

17             THE COURT:  All right.  In count 1 of the

18   indictment, the grand jury charges that beginning on a

19   date unknown to the grand jury, but no later than in or

20   about October 2020, and continuing up to and including

21   on or about November 17th, 2021, in the Eastern District

22   of North Carolina and elsewhere, the defendants,

23   Christopher Lamar Baker, Elizabeth Anne Young, also

24   known as Piper, Kara Hernandez, Lanny Ray Bentley,

25   Angela Bowman, also known as Boo Boo, Ted Wesley Cannon,

```
 1   also known as Bam, Amber Cross, Houston Phillips, Kevin
 2   Roberson, Landon Holcomb, also known as Jabber, Dustin
 3   Travis, and Ashley Elizabeth Hall, did knowingly and
 4   intentionally combine, conspire, confederate, agree, and
 5   have a tacit understanding with each other and other
 6   persons, known and unknown to the grand jury, to
 7   knowingly and intentionally distribute and possess with
 8   the intent to distribute methamphetamine, in violation
 9   of Title 21, United States Code, Section 841(a)(1).
10            With respect to Kara Hernandez -- quantity
11   of controlled substances involved in the conspiracy.
12   With respect to Kara Hernandez, Lanny Ray Bentley,
13   Angela Bowman, also known as Boo Boo, and Ted Wesley
14   Cannon, also known as Bam, and Ashley Elizabeth Hall,
15   the amounts involved in the conspiracy attributable to
16   them as a result of their own conduct and the conduct of
17   other conspirators reasonably foreseeable to them, are
18   500 grams or more of a mixture or substance containing a
19   detectable amount of methamphetamine, a Schedule II
20   controlled substance, in violation of Title 21, United
21   States Code, Section 841(b)(1)(A).
22            With respect to Christopher Lamar Baker,
23   Elizabeth Anne Young, also known as Piper, Amber Cross,
24   Houston Phillips, Kevin Roberson, Landon Holcomb, also
25   known as Jabber, and Dustin Travis, the amounts involved
```

in the conspiracy attributable to them as a result of
their own conduct and the conduct of other conspirators
reasonably foreseeable to them, are 50 grams or more of
methamphetamine, a Schedule II controlled substance, in
violation of Title 21, United States Code, Section
841(b)(1)(A), all in violation of Title 21, United
States Code, Section 846.

How do you now plead to count 1?

DEFENDANT BAKER:  Not guilty.

THE COURT:  In count 5 of the fourth
superseding indictment, the grand jury charges that on
or about June 4th, 2021 -- I'm sorry.  Count 5 has been
dismissed.  Thank you.

In count 6 of the fourth superseding
indictment, the grand jury charges that on or about
October 16th, 2020, in the Eastern District of North
Carolina, the defendants, Christopher Lamar Baker and
Amber Cross, aiding and abetting each other, did
knowingly and intentionally distribute 5 grams or more
of methamphetamine, a Schedule II controlled substance,
in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

How do you now plead to count 6?

DEFENDANT BAKER:  Not guilty.

THE COURT:  In count 7 of the fourth

superseding indictment, the grand jury charges that on
or about October 30th, 2020, in the Eastern District of
North Carolina, the defendants, Christopher Lamar Baker
and Kevin Roberson, aiding and abetting each other, did
knowingly and intentionally distribute 5 grams or more
of methamphetamine, a Schedule II controlled substance,
in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2.

How do you now plead to count 7?

DEFENDANT BAKER: Not guilty.

THE COURT: In count 8 of the fourth
superseding indictment, the grand jury charges that on
or about November 6th, 2020, in the Eastern District of
North Carolina, the defendants, Christopher Lamar Baker
and Landon Holcomb, also known as Jabber, aiding and
abetting each other, did knowingly and intentionally
distribute 50 grams or more of methamphetamine, a
Schedule II controlled substance, in violation of Title
21, United States Code, Section 841(a)(1) and Title 18,
United States Code, Section 2.

How do you now plead to count 8?

DEFENDANT BAKER: Not guilty.

THE COURT: In count 12 of the fourth
superseding indictment, the grand jury charges that on
or about February 18th, 2021, in the Eastern District of

1  North Carolina, the defendant, Christopher Lamar Baker,

2  aiding and abetting another, did knowingly and

3  intentionally distribute 50 grams or more of a mixture

4  and substance containing methamphetamine, a Schedule II

5  controlled substance, in violation of Title 21, United

6  States Code, Section 841(a)(1) and Title 18, United

7  States Code, Section 2.

8             How do you now plead to count 12?

9             DEFENDANT BAKER:  Not guilty.

10            THE COURT:  In count 17 of the fourth

11  superseding indictment, the grand jury charges that on

12  or about November 5th, 2021, in the Eastern District of

13  North Carolina, the defendant, Christopher Lamar Baker,

14  aiding and abetting another, did knowingly possess a

15  firearm, to include a machine gun, in violation of a

16  drug trafficking crime for which he may be prosecuted in

17  a court of the United States, as charged in count 16 of

18  this indictment, in violation of Title 18, United States

19  Code, Section 924(c)(1)(B)(ii) and Title 18, United

20  States Code, Section 2.

21            How do you now plead to count 17?

22            DEFENDANT BAKER:  Not guilty.

23            THE COURT:  This matter will proceed to

24  trial after the next arraignment.

25             (Discussion off the record between the Court

1  and the law clerk.)

2          THE COURT:  In count 13 of the fourth

3  superseding indictment, the grand jury charges that on

4  or about February 27th, 2021, in the Eastern District of

5  North Carolina, the defendant, Christopher Lamar Baker,

6  aiding and abetting another, did knowingly and

7  intentionally distribute 5 grams or more of

8  methamphetamine, a Schedule II controlled substance, in

9  violation of Title 21, United States Code, Section

10  841(a)(1) and Title 18, United States Code, Section 2.

11          How do you now plead to count 13?

12          DEFENDANT BAKER:  Not guilty.

13          THE COURT:  All right.  In count 14 of the

14  fourth superseding indictment, the grand jury charges

15  that on or about February 27th, 2021, in the Eastern

16  District of North Carolina, the defendant, Christopher

17  Lamar Baker, aiding and abetting another, did knowingly

18  possess a firearm in furtherance of a drug trafficking

19  crime for which he may be prosecuted in a court of the

20  United States, as charged in count 13 of this

21  indictment, in violation of Title 18, United States

22  Code, Section 924(c)(1)(A) and Title 18, United States

23  Code, Section 2.

24          How do you now plead to count 14?

25          DEFENDANT BAKER:  Not guilty.

1            THE COURT:  In count 16 of the fourth

2    superseding indictment, the grand jury charges that on

3    or about November 5th, 2021, in the Eastern District of

4    North Carolina, the defendants, Christopher Lamar Baker,

5    aiding and abetting another, did knowingly and

6    intentionally distribute 50 grams or more of

7    methamphetamine, a Schedule II controlled substance, in

8    violation of Title 21, United States Code, Section

9    841(a)(1) and Title 18, United States Code, Section 2.

10            How do you now plead to count 16?

11            DEFENDANT BAKER:  Not guilty.

12            THE COURT:  I'm sorry.  I had a page stick

13    together to one before it.  Kristina, have we covered

14    all of them?

15            THE LAW CLERK:  Yes.

16            THE COURT:  Thank you.  All right.  We will

17    now proceed to arraignment in the case of United States

18    of America versus Landon Holcomb.  If the clerk would

19    please call the case.

20            THE CLERK:  USA versus Landon Holcomb.

21            THE COURT:  Counsel, please state your

22    appearance for the record.

23            MS. SALMON:  Good morning, Your Honor.

24    Elisa Salmon for Landon Holcomb.

25            MS. SANDLING:  Good morning, Your Honor.

1    Kelly Sandling for the government.

2              MR. DODSON:  Robert Dodson for the

3    government, Your Honor.

4              THE COURT:  Ms. Salmon, is your client

5    prepared to enter his plea today?

6              MS. SALMON:  Yes, Your Honor.

7              THE COURT:  Good morning, Mr. Holcomb.

8              DEFENDANT HOLCOMB:  Good morning, Your

9    Honor.

10             THE COURT:  If the clerk would administer

11   the oath.

12             THE CLERK:  Raise your right hand, left hand

13   on the Bible, and please state your name for the record.

14             DEFENDANT HOLCOMB:  Landon Holcomb.

15             (The defendant was placed under oath.)

16             THE COURT:  Mr. Holcomb, do you understand

17   you're now under oath, and if you do not answer my

18   questions truthfully, the United States may use your

19   answers against you in another prosecution for perjury

20   or for making false statements?

21             DEFENDANT HOLCOMB:  Yes, Your Honor.

22             THE COURT:  Before accepting your plea of

23   either guilty or not guilty, there are a number of

24   questions that I must ask you and a number of things

25   that I must tell you.  It's important you fully

understand my questions and statements.  If you don't
understand me at any time, please say so.  I'm happy to
repeat anything, and you may confer with your lawyer
before answering any of my questions.

How old are you, sir?

DEFENDANT HOLCOMB:  28, Your Honor.

THE COURT:  How far did you go in school?

DEFENDANT HOLCOMB:  High school.

THE COURT:  Do you speak and understand
English?

DEFENDANT HOLCOMB:  Yes, Your Honor.

THE COURT:  Do you read and write in
English?

DEFENDANT HOLCOMB:  Yes, Your Honor.

THE COURT:  Do you have any illness or
condition that affects your ability to hear and
understand these proceedings today?

DEFENDANT HOLCOMB:  No, Your Honor.

THE COURT:  Have you taken any drugs,
medicine, pills, or drunk any alcohol within the last 24
hours?

DEFENDANT HOLCOMB:  No, Your Honor.

THE COURT:  Ms. Salmon, do you have any
doubt as to your client's competence to plead at this
time?

```
 1                MS. SALMON:  No, sir.

 2                THE COURT:  Ms. Sandling, does the United

 3     States have any such doubt?

 4                MS. SANDLING:  No, Your Honor.

 5                THE COURT:  Based on this Court's questions

 6     and the defendant's and counsel's answers, this Court

 7     finds that the defendant is competent to enter a plea

 8     today.

 9                Mr. Holcomb, you were arraigned on the third

10     superseding indictment on August 24th, 2022, and you

11     pleaded not guilty to all charges at those times.  Do

12     those pleas still stand?

13                DEFENDANT HOLCOMB:  Yes, Your Honor.

14                THE COURT:  Have you received a copy of the

15     fourth superseding indictment?

16                DEFENDANT HOLCOMB:  Yes, Your Honor.

17                THE COURT:  Have you had an adequate

18     opportunity to discuss the fourth superseding indictment

19     and your case with your lawyer?

20                DEFENDANT HOLCOMB:  Yes, Your Honor.

21                THE COURT:  Have you had all the

22     conversation with her that you need?

23                DEFENDANT HOLCOMB:  Yes, Your Honor.

24                THE COURT:  Are you fully satisfied with

25     your lawyer's legal services in your case?
```

1          DEFENDANT HOLCOMB:  Yes, Your Honor.

2          THE COURT:  At your arraignment on the third

3    superseding indictment, I discussed your rights with

4    you.  Do you need me to discuss those rights again, or

5    do you remember them?

6          DEFENDANT HOLCOMB:  I remember them, Your

7    Honor.

8          THE COURT:  All right.  Do you waive me

9    reading aloud the fourth superseding indictment at this

10   time?

11         DEFENDANT HOLCOMB:  Yes, Your Honor.

12         THE COURT:  Mr. Holcomb, have you answered

13   all my questions truthfully today?

14         DEFENDANT HOLCOMB:  Yes, Your Honor.

15         THE COURT:  I'm now going to read the

16   charges and ask you how you plead.

17         In count 1 of the fourth superseding

18   indictment, the grand jury charges that beginning on a

19   date unknown to the grand jury, but no later than in or

20   about October 2020, and continuing up to and including

21   on or about November 17th, 2021, in the Eastern District

22   of North Carolina and elsewhere, the defendants,

23   Christopher Lamar Baker, Elizabeth Anne Young, also

24   known as Piper, Kara Hernandez, Lanny Ray Bentley,

25   Angela Bowman, also known as Boo Boo, Ted Wesley Cannon,

also known as Bam, Amber Cross, Houston Phillips, Kevin Roberson, Landon Holcomb, also known as Jabber, Dustin Travis, and Ashley Elizabeth Hall, did knowingly and intentionally combine, conspire, confederate, agree, and have a tacit understanding with each other and other persons, known and unknown to the grand jury, to knowingly and intentionally distribute and possess with the intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

Quantity of controlled substances involved in the conspiracy. With respect to Kara Hernandez, Lanny Ray Bentley, Angela Bowman, also known as Boo Boo, and Ted Wesley Cannon, also known as Bam, and Ashley Elizabeth Hall, the amounts involved in the conspiracy attributable to them as a result of their own conduct and the conduct of other conspirators reasonably foreseeable to them are 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A).

With respect to Christopher Lamar Baker, Elizabeth Anne Young, also known as Piper, Amber Cross, Houston Phillips, Kevin Roberson, Landon Holcomb, also known as Jabber, and Dustin Travis, the amounts involved

in the conspiracy attributable to them as a result of
their own conduct and the conduct of other conspirators
reasonably foreseeable to them are 50 grams or more of
methamphetamine, a Schedule II controlled substance, in
violation of Title 21, United States Code, Section
841(b)(1)(A), all in violation of Title 21, United
States Code, Section 846.

How do you now plead to count 1?

DEFENDANT HOLCOMB:  Not guilty.

THE COURT:  For the record, the penalties
for violation of count 1 are not less than ten years and
not more than life imprisonment, a fine not to exceed
$10 million, or both such fine and imprisonment; not
less than five years and not more than life on
supervised release; not more than five years of
imprisonment upon revocation of supervised release; a
100-dollar special assessment; and restitution, if
applicable.

Those penalties have not changed between the
third and fourth superseding indictment.

You've also been charged in changed count 8
in the fourth superseding indictment with distribution
of 50 grams or more of methamphetamine, a Schedule II
controlled substance, and aiding and abetting.  The
penalties for that charge are not less than ten years

and not more than life imprisonment, a fine not to exceed $10 million, or both such fine and imprisonment; not less than five years and not more than life on supervised release; not more than five years of imprisonment upon revocation of supervised release; a 100-dollar special assessment; and restitution, if applicable.

In count 8 of the fourth superseding indictment, the grand jury charges that on or about November 6th, 2020, in the Eastern District of North Carolina, the defendants, Christopher Lamar Baker and Landon Holcomb, also known as Jabber, aiding and abetting each other, did knowingly and intentionally distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

How do you now plead to count 8?

DEFENDANT HOLCOMB:  Not guilty.

THE COURT:  All right.  This matter will now proceed to trial.

If the clerk would please call the case, and then we will wait for the arrival of the jury.

THE CLERK:  USA versus Christopher Baker and USA versus Landon Holcomb.

                    THE COURT:  Counsel, please state your

appearance for the record.

                    MR. CHETSON:  Damon Chetson for Mr. Baker,

Your Honor.

                    MS. SALMON:  Elisa Salmon for Mr. Holcomb,

Your Honor.

                    MS. SANDLING:  Kelly Sandling for the

government.

                    MR. DODSON:  Robert Dodson for the

government.

                    THE COURT:  All right.  Off the record.

                    (The foregoing concluded at 10:39 a.m.)

                    (Pause in proceedings to wait for the jury

panel to enter the courtroom.  Voir dire commenced at

10:52 a.m. and concluded at 1:58 p.m.)

                    (The following commenced at 1:58 p.m.)

                    THE COURT:  All right.  On the record,

outside the presence of the jury.  Is there anything we

need to take up regarding preliminary instructions or

opening statements before the Court proceeds?

                    MS. SANDLING:  Your Honor, regarding -- just

after the opening, I wanted to inform Your Honor that

the government intends to call as witness number 1

Jeremy Scheetz, and then witness number 2 will be Agent

Babits.  I know Your Honor wanted to do a voir dire, so

1     I just wanted to alert Your Honor as to that.

2               THE COURT:  So are those both the expert

3     witnesses?  I'll ask the parties, in terms of proceeding

4     expeditiously with the jury's time, is it better -- I

5     think voir dire was at the request of defense counsel.

6     Do you want -- should we just voir dire them

7     successively, make our record, then bring the jury in

8     and call them in succession?  Or do you want to do them

9     individually, one after the -- send the jury back out

10    and then bring them back?  The Court's preference would

11    be to do both of them, make our record, and then have

12    them proceed in front of the jury without pulling the

13    jury in and out.  I don't think it makes a difference.

14              MR. CHETSON:  Yes, Your Honor.  I would ask

15    to voir dire them both.  I think that would be my

16    preference.  I don't know what Ms. Salmon's preference

17    is.

18              MS. SALMON:  Your Honor, I'm fine with them

19    being voir dired as, sort of, one proceeding.

20              THE COURT:  When we return, we'll return,

21    we'll do the voir dire.  Are the witnesses on standby?

22    Can they be brought in before we bring the jury back

23    from lunch?

24              MS. SANDLING:  Yes, Your Honor.  They're on

25    the third floor.

```
 1              THE COURT:  All right.  We'll bring the

 2    witnesses in.  We'll proceed to the voir dire.  We'll

 3    put that on our record.  Then we'll bring the jury back

 4    in, instruct, and open.

 5              MS. SANDLING:  Your Honor, the government

 6    does have one other concern regarding opening in that

 7    the government would be making an oral motion in limine

 8    at this time to prevent Elisa Salmon from referring to

 9    any statement of Mr. Baker during her opening in this

10    case.  We've had some discussions with Ms. Salmon

11    regarding -- she has apparently prepared a transcript of

12    a statement that Mr. Baker made on the December 20th

13    proffer.  The government believes that any mention of

14    that statement would be hearsay because Mr. Baker is not

15    Ms. Salmon's party opponent.  Further, the government

16    believes that there would be a Bruton issue should

17    Ms. Salmon attempt to elicit or bring up during opening

18    or any cross-examination of witnesses in this case a

19    statement of Mr. Baker because of the Bruton issue.

20              THE COURT:  I'll hear from you, Ms. Salmon.

21              MS. SALMON:  Your Honor, I don't intend to

22    make any mention of Mr. Baker or any -- Mr. Baker, of

23    course, but not of any statement that he has made to law

24    enforcement or otherwise.  I'm very aware of the Bruton

25    issue.  I do not intend to raise that in my opening
```

1    statement.

2            Right now in my cross-examination forecast,

3    I also don't have any expectation that that's going to

4    be a theme or recurring issue in any cross-examination

5    of any government witness, of course reserving if the

6    door is opened or something should happen.  But I would

7    ask to approach Your Honor before anything like that

8    arises because of the potential Sixth Amendment and

9    Bruton issues that would raise.

10           THE COURT:  I will tell you the Court's very

11   concerned about a Bruton issue.  I think this was --

12   there was no motion to sever in this case.  There was no

13   discussion of trying these individuals separately which

14   would have the potential of forcing a choice of who goes

15   first, but would obviate the Sixth Amendment

16   confrontation right.  It sounds like Ms. Salmon's

17   statements render the government's motion unopposed, so

18   I'll grant the motion in limine regarding opening and

19   will reserve for bench conference anything that appears

20   to be in approach to his statements at the time.

21           MS. SANDLING:  Thank you, Your Honor.

22           THE COURT:  All right.  Thank you.

23           MS. SALMON:  And, Your Honor, also just to

24   clarify on the record, I do not have an exhibit or any

25   proposed exhibit, transcript of any proffer of

```
1   Mr. Baker.  I'm aware of the Court's sealed order in
2   that respect, and I do not intend to offer any sort of
3   transcript of any interview of Mr. Baker.  Thank you,
4   sir.
5                THE COURT:  All right.  Thank you,
6   Ms. Salmon.
7                All right.  With that, I will send the
8   parties to lunch, and we will come back prepared to
9   proceed with the voir dire.
10               (Proceedings concluded at 2:02 p.m.)
11
12
13
14
15
16
17
18                    C E R T I F I C A T E
19
20      I certify that the foregoing is a correct
21   transcript from the record of proceedings in the
22   above-entitled matter.
23
24   /s/Risa A. Kramer                    6/5/2023
25   Risa A. Kramer, RMR, CRR                  Date
```